Opinion issued May 24, 2007






 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00376-CV






JUDY HITCHCOCK, Hitchcock


V.


BOARD OF TRUSTEES, CYPRESS-FAIRBANKS INDEPENDENT
SCHOOL DISTRICT, Appellee






On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2005-46759







O P I N I O N

 Appellant, Judy Hitchcock, a teacher at Matzke Elementary School ("Matzke")
appeals from the trial court's summary judgment ordering that she take nothing
against appellee, Cypress-Fairbanks Independent School District (the "District"). In
five issues, Hitchcock argues that (1) the exhaustion of administrative remedies
doctrine does not bar her causes of action because (a) the doctrine no longer exists
under the 1995 amendments to the Education Code and (b) the 15-day deadline for
filing a grievance violates the Texas Civil Practice and Remedies Code and the open
courts, due process, and equal protection provisions of the Texas Constitution; (2) the
exhaustion requirement does not apply to her claims; (3) the District breached her
employment contract with the District, causing her damages; (4) alternatively, she has
established a right to recover from the District under the doctrine of quantum meruit;
and (5) the District's actions constitute an unconstitutional taking under Article I,
section 17, of the Texas Constitution.

 We affirm.

Facts and Procedural History

 Hitchcock teaches physical education at Matzke pursuant to an employment
contract with the District. During the 2003-04 through the 2005-06 school years
teachers at Matzke were required to be at school from 7:30 a.m. until 3:30 p.m. This
time period is referred to as the "workday." During these same school years, the
school day began for students at 8:10 a.m. and ended at 3:10 p.m. This time period
is referred to as the "instructional day."

 Under section 21.404 of the Texas Education Code, each classroom teacher is
entitled to at least 45 minutes every day, "within the instructional day," for
"instructional preparation, including parent-teacher conferences, evaluating students'
work, and planning." (1) In Weatherbie v. Tuloso-Midway Independent School District,
the commissioner of education concluded that the requirement that the planning
period be scheduled within "the seven-hour school day" under section 13.902, the
predecessor to section 21.404, required that the planning period be scheduled during
the time when students were in class--i.e., during the instructional day. (2) During the
spring of 2003, Anne Odum, the principal at Matzke, informed the "large group"
teachers' (3) representative on the campus planning committee that the group's planning
periods for the 2003-04 school year would be scheduled from 7:40 a.m. until 8:25
a.m. The planning period was entirely within the teachers' workday but included 30
minutes outside of the students' instructional day. Later that spring, when Odum met
with the "large group" teachers, Hitchcock questioned the fairness and propriety of
this schedule, but was informed by Odum that she had checked and that the schedule
was permissible and was being used at other schools in the district.

 During the 2004-05 school year, Hitchcock's planning period was scheduled
from 7:30 a.m. until 8:25 a.m. At some point, a newly-hired teacher for that year
informed Hitchcock that planning periods scheduled outside of the instructional day
were illegal. Sometime at the end of September or the beginning of October 2004,
Hitchcock located the rule governing the scheduling of planning periods in the
Faculty Handbook and the commissioner's Weatherbie decision and showed them to
Odum. On February 10, 2005, Odum met with Hitchcock and offered to reschedule
her planning period. On February 18, 2005, Hitchcock and two other teachers filed
a Level One grievance with the District "request[ing] that the district immediately
provide a full teacher planning and preparation period within the instructional day as
required by law," or, "[a]s an alternative . . ., provide them with additional
compensation for the temporary waiver of their rights . . . based on their individual
hourly rate of pay and prorated for the time given them for planning and preparation
outside of the instructional day." Odum responded to the grievance by rescheduling
their planning periods from 8:10 a.m. until 9:05 a.m., effective February 23, 2005.

 On March 10, 2005, despite the scheduling change to her planning period,
Hitchcock attempted to appeal her grievance to the next level, Level Two. The
District's general counsel responded on March 22, 2005 that appellant's "requested
relief was granted in its entirety" by the February 23, 2005 scheduling change and
that if an issue had not been addressed by the first grievance, the appropriate
procedure would be to "initiate the grievance process again." That same day,
Hitchcock responded that she had requested to proceed to Level Two because of her
desire to recover payment for the days during the current school year when her
planning period had been scheduled outside of the instructional day.

 On April 6, 2005, Hitchcock filed a second Level One grievance, which
"request[ed] that the district provide her with additional compensation . . . for
planning and preparation outside of the instructional day . . . ." Odum denied her
grievance as untimely because it had not been filed within 15 days of the date
Hitchcock "knew or should have known about the issue giving rise to the complaint,"
and because she was not entitled to recover unliquidated damages. This decision was
upheld at Level Two on May 19, 2005 by Betty Willis, the Assistant Superintendent
for Elementary Instruction, and at Level Three on June 13, 2005 by the school board.

 On July 22, 2005, Hitchcock filed her original petition in Harris County district
court alleging four causes of action--(1) breach of contract; (2) damages due to
violation of statute; (3) quantum meruit; and (4) unconstitutional taking. She further
alleged, "[T]here are no adequate and sufficient administrative remedies available . . .
and therefore no administrative remedies which are required to be exhausted." 
Following the filing of this action in district court, Hitchcock appealed the Level
Three decision to the commissioner of education. On September 30, 2005, the
Administrative Law Judge issued a proposal for decision recommending that the case
be dismissed for lack of jurisdiction because Hitchcock failed to exhaust her
administrative remedies when she did not file her grievance within the 15-day
deadline. On March 27, 2007, the trial court issued an order granting the district's
motion for summary judgment, which had argued that Hitchcock had failed to
properly exhaust her administrative remedies and that she had not suffered any
damages for which she could be legally compensated; denying Hitchcock's motion
for summary judgment; and ordering that Hitchcock "take nothing" against the
District.

Standard of Review

 Because summary judgment is a question of law, we review a trial court's
summary judgment decision de novo. Bendigo v. City of Houston, 178 S.W.3d 112,
113 (Tex. App.--Houston [1st Dist.] 2005, no pet.). The standard of review for a
traditional summary judgment motion is threefold: (1) the movant must show that
there is no genuine issue of material fact and that he is entitled to judgment as a
matter of law; (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, the court must take evidence favorable to the
nonmovant as true; and (3) the court must indulge every reasonable inference in favor
of the nonmovant and resolve any doubts in the nonmovant's favor. Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); see Tex. R. Civ. P. 166a(c). 
A defendant seeking summary judgment must as a matter of law negate at least one
element of each of the plaintiff's theories of recovery or plead and prove each element
of an affirmative defense. Mo. Pac. R.R. v. Lely Dev. Corp., 86 S.W.3d 787, 790
(Tex. App.--Austin 2002, pet. dism'd). If a trial court's order granting summary
judgment does not specify the basis for the court's ruling, as is the case here, the
summary judgment will be affirmed if any of the theories advanced by the movant is
meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).

 When both sides move for summary judgment and the trial court grants one
motion but denies the other, we review all of the evidence, determine all questions
presented, and render the judgment the trial court should have rendered. Comm'rs
Court of Titus County v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). However, "[b]efore
an appellate court may reverse summary judgment for one party and render judgment
for the other party, all parties must have sought final judgment relief in their
cross-motions for summary judgment." Montgomery v. Blue Cross & Blue Shield of
Tex., Inc., 923 S.W.2d 147, 152 (Tex. App.--Austin 1996, writ denied).

Exhaustion of Administrative Remedies

 In her first issue, Hitchcock argues that the exhaustion of administrative
remedies doctrine does not bar her causes of action because (1) the doctrine no longer
exists under the 1995 amendments to the Education Code and (2) the 15-day deadline
for filing a grievance violates the Texas Civil Practice and Remedies Code and the
open courts, due course of law, and equal protection provisions of the Texas
Constitution.

 Texas law requires an aggrieved party whose claim relates to the administration
of school laws and involves disputed fact issues to exhaust all administrative
remedies. Janik v. Lamar Consol. Indep. Sch. Dist., 961 S.W.2d 322, 323 (Tex.
App.--Houston [1st Dist.] 1997, pet. denied). Until all administrative remedies have
been exhausted, a trial court lacks subject-matter jurisdiction and must dismiss
without prejudice the claims within the agency's exclusive jurisdiction. In re Mabank
Indep. Sch. Dist., 165 S.W.3d 808, 812 (Tex. App.--Tyler 2005, no pet.) (citing
Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex. 2002)). 
 Under the District's policy, district employees may initiate the formal grievance
process by filing a written grievance. The grievance must be filed "[w]ithin 15
[business] days of the date the employee first knew, or with reasonable diligence
should have known, of the decision or action giving rise to the complaint or
grievance." If the grievance is not timely filed, it "may be dismissed, on written
notice to the employee, at any point during the complaint process."

 Here, Hitchcock admitted during her deposition that she first learned that her
planning period for the 2003-04 school year would be scheduled from 7:40 a.m. until
8:25 a.m. during the spring of 2003. She determined that the scheduling of her
planning period was contrary to Weatherbie (4) and discussed this schedule with Odum
in late September or early October 2004. Yet, she did not file her initial grievance,
which requested additional compensation only as an alternative to rescheduling her
planning period, until February 18, 2005; and she did not file her second grievance,
affirmatively requesting additional compensation, until April 6, 2005. Thus,
Hitchcock clearly did not meet the 15-day deadline for filing her grievance, and,
therefore, she failed to exhaust all available administrative remedies. See Janik, 961
S.W.2d at 323. Because Hitchcock did not exhaust all available administrative
remedies, the trial court lacked subject matter jurisdiction over her suit and should
have dismissed without prejudice the claims within the agency's exclusive
jurisdiction. See In re Mabank, 165 S.W.3d at 812 (citing Subaru, 84 S.W.3d at 221).

 In addition, because Hitchcock did not file a grievance alleging the four causes
of action alleged in her lawsuit against the District, she also failed to exhaust her
administrative remedies regarding these causes of action, unless an exception to the
exhaustion requirement applies. See Janik, 961 S.W.2d at 323 (noting that appellant
was required to exhaust administrative remedies before resorting to courts unless
exception to requirement applies).

 Before we address whether the causes of action alleged in this suit fall within
an exception to the exhaustion requirement, however, we must address Hitchcock's
arguments (1) that the doctrine does not bar her causes of action because the doctrine
no longer exists under the 1995 amendments to the Education Code and (2) that the
15-day deadline for filing a grievance violates sections 16.070 and 16.071 of the
Texas Civil Practice and Remedies Code (5) and the open courts, due course of law, and
equal protection provisions of the Texas Constitution.

 Amended Education Code

 In subpart A of her first issue, Hitchcock argues that the intent and effect of the
1995 amendments to the Education Code were to eliminate any exhaustion
requirement and to permit public school employees to seek immediate access to the
courts because the "dramatic limitation" of the Commissioner's jurisdiction rendered
the administrative remedy inadequate. 

 In 1995, the Texas Legislature repealed section 11.13 of the Education Code
and replaced it with section 7.057. At the time it was repealed, section 11.13(a) read:

 Except in cases of student disciplinary actions . . ., persons having any
matter of dispute among them arising under the school laws of Texas or
any person aggrieved by the school laws of Texas or by actions or
decisions of any board of trustees or board of education may appeal in
writing to the commissioner of education, who, after due notice to the
parties interested, shall hold a hearing and render a decision without cost
to the parties involved, but nothing contained in this section shall
deprive any party of any legal remedy.


Act of Aug. 26, 1986, 69th Leg., 2d C.S., ch. 4, § 3, sec. 11.13(a), 1986 Tex. Gen.
Laws 6, 10 (emphasis added). Section 7.057(a) currently states:

 Except as provided by Subsection (e), a person may appeal in writing to
the commissioner [of education] if the person is aggrieved by:


 (1) the school laws of this state; or


 (2) actions or decisions of any school district board of trustees
that violate:


 (A) the school laws of this state; or


 (B) a provision of a written employment contract between 

 the school district and a school district employee, if a
violation causes or would cause monetary harm to the
employee.


Tex. Educ. Code Ann. § 7.057(a) (Vernon 2006) (emphasis added). 

 In this context, the "may" has historically been explained to mean that "an
aggrieved person may appeal, and if an appeal is taken, it must be to the commissioner
if the matter is one within the scope of the agency's review powers." Jones v.
Clarksville Indep. Sch. Dist., 46 S.W.3d 467, 470-71 (Tex. App.--Texarkana 2001,
no pet.) (first emphasis added). Since the 1995 amendments to the Education Code,
several courts, in addition to the Jones court, have implicitly upheld this
interpretation. For example, in Gutierrez v. Laredo Independent School District, the
San Antonio Court of Appeals affirmed the trial court's summary judgment
dismissing the appellant's claims for his failure to exhaust his administrative
remedies. 139 S.W.3d 363, 369 (Tex. App.--San Antonio 2004, no pet.). The
appeals court, noting that evidence had been presented to the trial court that the
school board had implemented a procedure to resolve grievances over an employee's
wages, held that because the appellant's claims fell within the jurisdiction of the
commissioner of education, the appellant "was required to seek administrative
remedies before seeking relief in the courts." Id. at 367; see also Harlandale Indep.
Sch. Dist. v. Rodriguez, 121 S.W.3d 88, 92-93 (Tex. App.--San Antonio 2003, no
pet.). 

 We likewise adopt the interpretation of the word "may" in section 7.057(a) to
mean that an aggrieved person may appeal, and if an appeal is taken, it must be to the
commissioner if the matter is one within the scope of the agency's review powers. 
Thus, despite the section 7.057 limitation to the commissioner's jurisdiction, as long
as an aggrieved party's claims still fall within that jurisdiction, the party is "required
to seek administrative remedies before seeking relief in the courts." See Gutierrez,
139 S.W.3d at 367.

 We hold that, in repealing section 11.13 and replacing it with section 7.057, the
legislature did not intend to allow aggrieved parties to bypass an appeal to the
commissioner or to bypass available administrative remedies as a whole and to permit
public school employees to seek immediate access to the courts.

 We overrule subpart A of Hitchcock's first issue. 


 Texas Civil Practice and Remedies Code § 16.070

 In subpart B of her first issue, Hitchcock argues that the 15-day deadline for
filing a grievance violates section 16.070(a) of the Texas Civil Practice and Remedies
Code, which provides that "a person may not enter a stipulation, contract, or
agreement that purports to limit the time in which to bring a suit on the stipulation,
contract, or agreement to a period shorter than two years." See Tex. Civ. Prac. &
Rem. Code Ann. § 16.070(a) (Vernon 1997). More specifically, Hitchcock argues
that the 15-day deadline is "the functional equivalent of a statute of limitations" but
that "the Legislature has given no authority to the local school boards of this State to
adopt statutes of limitations against their employees . . . ." (6)

 Hitchcock's argument is without merit. The instant suit is not a suit on an
agreement but a suit for damages for the District's alleged violation of a statute. 
Hitchcock points to no clause in any agreement she entered, and we have found none,
that purports to limit the time in which she may file suit on the agreement. The
undisputed summary judgment affidavit of Paul Tapp, an attorney employed by the
Association of Texas Professional Educators, establishes that nearly all districts
require grievances to be filed within no more than 15 business days from the date an
employee first knows of the act giving rise to the grievance. Hitchcock provides no
authority that this practice is contrary to law, and we know of none. Rather, we
observe that Chapter 21 of the Texas Education Code, which applies to terminations,
incorporates a 15-day deadline for appeal of a termination notice. See Tex. Educ.
Code Ann. §§ 21.207(a), 21.253(a) (Vernon 2006). Given the gravity of a
termination notice relative to a grievance, we cannot conclude that the 15-day
deadline for filing a grievance is contrary to law or to the policy of this state. 

 There is no question that Hitchcock knew that her planning period had been
misscheduled in violation of the Commissioner of Education's Weatherbie decision (7)
by early October 2004. Nevertheless, she waited until February 2005 to complain to
the District and to file her grievance, which she did despite the District's 
rescheduling of her planning period effective February 23, 2005. 

 We overrule subpart B of Hitchcock's first issue.

 Texas Civil Practice and Remedies Code § 16.071

 In subpart C of her first issue, Hitchcock argues that the 15-day deadline for
filing a grievance also violates section 16.071(a) of the Texas Civil Practice and
Remedies Code. More specifically, Hitchcock contends that the deadline is "void
insofar as it is 'a condition precedent to the right to sue.'" Section 16.071(a) states
that "[a] contract stipulation that requires a claimant to give notice of a claim for
damages as a condition precedent to the right to sue on the contract is not valid unless
the stipulation is reasonable. A stipulation that requires notification within less than
90 days is void." Tex. Civ. Prac. & Rem. Code Ann. § 16.071(a) (Vernon 1997). 
The 15-day deadline at issue is not a stipulation in a contract between Hitchcock and
the District. Thus, we conclude that section 16.071 is inapplicable.

 We overrule subpart C of Hitchcock's first issue.

 Texas Constitutional Arguments: Open Courts, Due Process, and 

 Equal Protection


 In subparts D through F of her first issue, Hitchcock argues that the 15-day
deadline for filing a grievance violates the open courts, due process, and equal
protection provisions of the Texas Constitution.

Open Courts Provision

 In subpart D, Hitchcock contends that because Texas courts have uniformly
held that notice requirements of 90 days or less imposed by local governmental
bodies violate the open courts provision of the Texas Constitution, the District's 15-day deadline cannot constitutionally operate as a bar to her common law claims. See
Borne v. City of Garland, 718 S.W.2d 22, 25 (Tex. App.--Dallas 1986, writ ref'd
n.r.e.) (holding that home-rule city's notice of claim provision, requiring written
notice of personal injury claim within 30 days without any exceptions, such as "good
cause" or "actual notice," violated open courts provision of Texas Constitution). 
Hitchcock's argument is without merit.

 Article I, section 13, of the Texas Constitution, commonly known as the open
courts provision, states, in part, that "[a]ll courts shall be open, and every person for
an injury done him, in his lands, goods, person, or reputation, shall have remedy by
due course of law." Tex. Const. art. I, § 13. In Sax v. Votteler, the Texas Supreme
Court established a test for determining whether restrictions on the right to bring a
lawsuit constitute a violation of the open courts provision, holding that "the right to
bring a well-established common law cause of action cannot be effectively abrogated
by the legislature absent a showing that the legislative basis for the statute outweighs
the denial of the constitutionally-guaranteed right of redress." 648 S.W.2d 661,
665-66 (Tex. 1983). In applying this test, courts should "consider both the general
purpose of the statute and the extent to which the litigant's right to redress is
affected." Id. at 666. In analyzing a plaintiff's right to redress, the plaintiff must
prove two things: (1) that he has a legally cognizable common law cause of action
that is being restricted and (2) that the restriction is unreasonable or arbitrary when
balanced against the purpose and basis of the statute. Id.

 In Sutton v. Katy Independent School District, the plaintiff argued that the
provision of the Education Code that prohibited students from appealing disciplinary
actions to the commissioner of education and seeking review in district court violated
the open courts provision. 961 S.W.2d 216, 218 (Tex. App.--Houston [1st Dist.]
1997, no writ.). This court rejected that argument, however, because "there is no
common-law cause of action for judicial review of an administrative agency's
actions." Id. The same reasoning applies here.

 Hitchcock's "common law" claims are likewise all claims for damages
allegedly arising from the District's violation of section 21.404 of the Texas
Education Code, which was the subject of Hitchcock's untimely filed grievance. 
There is no common law right to review of a grievance brought against a school
district for misapplying the commissioner of education's directives. See Sutton, 961
S.W.2d at 218. Therefore, the open courts provision of the Texas Constitution does
not apply to Hitchcock's claims. 

 We overrule subpart D of Hitchcock's first issue.

Due Process

 In subpart E of her first issue, Hitchcock argues that the 15-day deadline
violates the due process clause of the Texas Constitution because it is "nothing more
than an obstacle in the path of citizens pursuing a legitimate redress for wrong
committed by public entities."

 A due process claim and an open courts claim are essentially identical because
the open courts provision "is, quite plainly, a due process guarantee." Sax, 648
S.W.2d at 664; see also Stout v. Grand Prairie Indep. Sch. Dist., 733 S.W.2d 290,
293 (Tex. App.--Dallas 1987, writ ref'd n.r.e.) ("The open courts provision is a facet
of due process."). Thus, for the reasons stated above, we hold that the 15-day
deadline does not violate the due process clause of the Texas Constitution.

 We overrule subpart E of Hitchcock's first issue.

Equal Protection

 In subpart F of her first issue, Hitchcock argues that the 15-day deadline
violates the equal protection clause of the Texas Constitution because "[t]here is no
rational basis for imposing a different limitation period for only those claims which
appear to be within the jurisdiction of the Commissioner, as opposed to all other
claims against a school district."

 The Texas Constitution leaves it to the legislature to determine which methods,
restrictions, and regulations are necessary and appropriate to provide for the
maintenance of the public schools. Spring Branch I.S.D. v. Stamos, 695 S.W.2d 556,
559 (Tex. 1985). Unless the classification created by a state regulatory scheme
infringes upon fundamental rights or burdens an inherently suspect class, the standard
under which equal protection claims are reviewed is "whether the establishment of
disparate treatment for different classes is rationally related to goals the legislature
sought to achieve by enacting the legislation." Stout, 733 S.W.2d at 295; see also
Stamos, 695 S.W.2d at 559. In Stout v. Grand Prairie Independent School District,
the Dallas Court of Appeals considered whether the Education Code's grant of
immunity to teachers for most claims violated equal protection because it treated
teachers differently from other citizens. See Stout, 733 S.W.2d at 295-96. The court
found that "[p]rotecting teachers from tort liability ensures the continuing availability
and high quality of free public education, an important social interest protected by the
Texas constitution." Id. at 295. Thus, "the disparate treatment" of those injured by
a school employee--i.e., application of the immunity doctrine--was rationally related
to the legislature's goal of ensuring the continuing availability of quality public
education and did not violate equal protection. Id. at 295-96.

 The policy behind requiring the exhaustion of administrative remedies is to
encourage parties to resolve their dispute without resorting to litigation when an
administrative procedure has been provided for that purpose. Vela v. Waco Indep.
Sch. Dist., 69 S.W.3d 695, 702 (Tex. App.--Waco 2002, pet. withdrawn by agr.). 
Requiring an employee to file a formal grievance within 15 days of the date the
employee first knew or should have known about the act giving rise to the grievance
compels employees to notify local school officials about a complaint and allows local
school officials to consider and quickly resolve complaints, thereby "ensur[ing] the
continuing availability and high quality of free public education." See Stout, 733
S.W.2d at 295. 

 We hold that the 15-day deadline is rationally related to the goal of quickly
resolving teacher complaints. Accordingly, we hold that the deadline does not violate
the equal protection clause of the Texas Constitution. 

 We overrule subpart F of Hitchcock's first issue.

 Exceptions

 Having overruled Hitchcock's challenges to the exhaustion requirement and
the 15-day deadline, we now address whether the causes of action alleged in her suit
against the District fall within an exception to the exhaustion requirement.

 Exhaustion of administrative remedies is not necessary if: (1) the aggrieved
party will suffer irreparable harm and the administrative agency is unable to provide
relief; (2) the claims are for a violation of a constitutional or federal statutory right;
(3) the cause of action involves pure questions of law and the facts are not disputed;
(4) the commissioner of education lacks jurisdiction over the claims; (5) the
administrative agency acts without authority; or (6) the claims involve parties acting
outside the scope of their employment with the school district. Dotson v. Grand
Prairie Indep. Sch. Dist., 161 S.W.3d 289, 291-92 (Tex. App.--Dallas 2005, no pet.).

 In her first amended original petition, Hitchcock alleges four causes of action
arising out of the District's misscheduling of her planning period outside of the
instructional day: (1) breach of contract; (2) damages due to violation of statute;
(3) quantum meruit; and (4) an unconstitutional taking. The only cause of action
alleged that arguably falls within the scope of actions not subject to the exhaustion
requirement is her takings claim under the Texas Constitution.

 The takings clause prohibits the State from taking a person's property under its
sovereign powers without adequate compensation unless by such person's consent. 
Tex. Const. art. I, § 17. To establish a takings claim, Hitchcock must prove (1) the
State intentionally performed certain acts (2) that resulted in a "taking" of her
property (3) for public use. See Steele v. City of Houston, 603 S.W.2d 786, 788-92
(Tex. 1980). A property interest must find its origin in some aspect of state law. 
Stamos, 695 S.W.2d at 561; see also Bishop v. Wood, 426 U.S. 341, 344-46, 96 S. Ct.
2074, 2077-78 (1976) (holding that state law determines which state-created interests
constitute property). An agency's failure to follow its own procedural rules
governing employment does not create a property interest that does not otherwise
exist. Stratton v. Austin Indep. Sch. Dist., 8 S.W.3d 26, 30 (Tex. App.--Austin 1999,
no pet.).

 Hitchcock has not identified any property that was taken from her for public
use. Rather, she complains that the District took her property by failing to follow its
own scheduling rule. Hitchcock has no protected property interest in the scheduling
of her workday by the District. See Stratton, 8 S.W.3d at 30. Moreover, the time
Hitchcock alleges the District improperly took from her was time for which she was
being compensated by the District, namely time within the workday. 

 We overrule Hitchcock's second issue.


 Other Claims

 Because we have ruled that Hitchcock failed to exhaust her administrative
remedies and that she has no viable cause of action that does not require exhaustion,
we need not address the merits of her breach of contract, quantum meruit, and takings
claims.

CONCLUSION

 We affirm the judgment of the trial court.



 

 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.
1. Tex. Educ. Code Ann. § 21.404 (Vernon 2006).
2. See Weatherbie v. Tuloso-Midway Indep. Sch. Dist., TEA Docket No. 080-R3-385 (1985)
(available at http://www.tea.state.tx.us/commissioner/1985/080385.DOC).
3. The "large group" teachers at Matzke teach physical education, music, and art.
4. See Weatherbie v. Tuloso-Midway Indep. Sch. Dist., TEA Docket No. 080-R3-385 (1985)
(available at http://www.tea.state.tx.us/commissioner/1985/080385.DOC).
5. See Tex. Civ. Prac. & Rem. Code Ann. §§ 16.070, 16.071 (Vernon 1997).
6. In Van Independent School District v. McCarty, a case concerning whether a school district
had waived a seven-day deadline for appealing a termination, a majority of the Texas
Supreme Court expressly refused to rule on whether school boards can impose and enforce
deadlines for administrative complaints. 165 S.W.3d 351, 354 (Tex. 2005) (O'Neill, J.,
dissenting).
7. See Weatherbie v. Tuloso-Midway Indep. Sch. Dist., TEA Docket No. 080-R3-385 (1985)
(available at http://www.tea.state.tx.us/commissioner/1985/080385.DOC).